JS-6, O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES WEATHERFORD,<br><br>                Petitioner,<br><br>   v.<br><br>SAFEGUARD METALS, LLC, a California limited liability company, and JEFERREY SANTULAN, individually,<br><br>                Respondents. | Case No.: 2:22-cv-07239-MEMF-MARx<br><br>**ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD [ECF NO. 1] AND JUDGMENT** |

     Before the Court is the Petition to Confirm Arbitration Award filed by Petitioner Charles Weatherford. ECF No. 1. For the reasons stated herein, the Court hereby GRANTS the Petition.

**I.    Background**

    **A.  Factual Background[1]**

     Respondent Safeguard Metals, LLC ("Safeguard") is in the business of advising clients on the diversification of their investment portfolio, and, in connection therewith, selling precious metals

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition and Statement of Claim. Petition to Confirm Arbitration Award, ECF No. 1 ("Petition" or "Pet."); Amended Statement of Claim, ECF No. 1-1 ("Claim").

1

bullion and minted precious metals coins. Claim ¶ 9. Respondent Jeffrey Santulan ("Santulan") established Safeguard in 2017 and is its sole manager and member. *Id.* ¶ 13.[2] Petitioner Charles Weatherford ("Weatherford") is a retired senior citizen and client of Safeguard. *Id.* ¶ 21.

                i. <u>Weatherford's Interactions with Safeguard</u>

In the fall of 2019, Weatherford contacted Safeguard to diversify his portfolio. *Id.* ¶ 22. Safeguard account representatives held themselves out as Weatherford's fiduciaries and advised him to invest his entire retirement portfolio of approximately $1.1 million in minted silver coins. *Id.* ¶ 24. In October 2019, based on the advice of Safeguard representatives, Weatherford opened a self-directed individual retirement account ("IRA") and bought approximately $900,000 in minted silver coins from Safeguard purportedly at market price. *Id.* ¶¶ 30–31. Following this investment, a Safeguard representative told Weatherford that the execution price for his purchase was $17.91, and any amount over that price would result in capital gains in his retirement account. *Id.* ¶ 34. In December 2019, Weatherford made additional purchases of approximately $200,000 on the same recommendations from Safeguard representatives. *Id.* ¶ 35. Thereafter, Safeguard regularly reported the account value to Weatherford by phone from January 2020 to August 2021. *Id.* ¶ 36. These estimates ranged between approximately $1.1 million and $1.4 million. *Id.* Weatherford's account statements reflected similar values. *Id.* ¶ 37.

Weatherford signed two virtually identical precious metals shipping and account agreements with Safeguard. *See id.* at 18–22 ("Account Agreement 1"), 23–29 ("Account Agreement 2") (collectively, the "Account Agreements"). The Account Agreements contained the following provisions:

> 4. <u>Client Assumes Investment Risk: Investment Decisions. Account Executives: Related Matters</u>. Client acknowledges that purchases and sales of Precious Metals involve considerable risk. . . . **Client acknowledges and agrees that Client assumes the risk of all investment decisions regarding any and all Precious Metals the Client purchases from Safeguard and Safeguard makes no guarantee or representation regarding Client's ability to profit (or avoid loss) from any**

---

[2] Santulan stated at his deposition that he uses the alternative names "Jeffrey Hill" and "Jeffrey Ikhan." Pet. ¶ 15. The Court will primarily be referring to Respondent as "Santulan" throughout this Order. Respondents Safeguard and Santulan will be referred to collectively as the "Safeguard Respondents."

>     **purchase or any representation regarding any tax implications of any purchase and the decision to purchase or sell Precious Metals.** My purchases from Safeguard are made subject to Client's own prudence, judgment and ultimate decision. **Client expressly acknowledges and agrees to hold Safeguard harmless for any damages arising out of the performance by Safeguard of this Agreement.** And client understands that past performance cannot be an indicative of future results. **Safeguard does not provide tax, investment, or legal advice or advisory services, and no one associated with Safeguard is authorized to provide any such advice or services.** Any written or oral statements by Safeguard, its officers, agents, account executives, or other representatives relating to future events or the attributes of certain Precious Metals are opinions only. Such statements, if any, are not representations of fact. . . . Further, Safeguard's account executives are not licensed brokers and their knowledge of Precious Metals and the Precious Metals marketplace may vary significantly, and such account executives' earnings are based on the amount of sales they generate.
>
>     . . .
>
>     v. <u>Arbitration of Disputes.</u> CLIENT UNDERSTANDS AND AGREES THAT BY SIGNING THIS AGREEMENT CLIENT IS AGREEING FOR HIMSELF/HERSELF, AND FOR CLIENT'S SUCCESSORS, ASSIGNS, HEIRS AND/OR ANY PARTY ACTING ON CLIENT'S BEHALF, **THAT ANY CONTROVERSY. CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION UNDER THE SAFEGUARD ARBITRATION ASSOCIATION'S RULES FOR ARBITRATION OF CONSUMER-RELATED DISPUTES AND CLIENT AND SAFEGUARD HEREBY EXPRESSLY WAIVE TRIAL BY JURY.** AS AN ALTERNATIVE, CLIENT MAY BRING A CLAIM IN A "SMALL CLAIMS", IF PERMITTED BY THAT SMALL CLAIMS COURT'S RULES.
>
>     . . . **THIS DISPUTE RESOLUTION PROVISION WILL BE GOVERNED BY THE FEDERAL ARBITRATION ACT. . . . JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING COMPETENT JURISDICTION. . . . THIS ARBITRATION AGREEMENT WILL SURVIVE THE TERMINATION OF YOUR RELATIONSHIP WITH SAFEGUARD.** . . . .

Account Agreement 1, at 1, 3–4 (emphasis added).

Around August 2020, Weatherford requested to cash out his account, but a Safeguard representative convinced him to exchange his holdings for coins with more purity, estimating that the price of silver would increase. Claim ¶ 38. In August 2021, Weatherford decided to cash out his coins and reinvest in more traditional investment vehicles. *Id.* ¶ 41. As of August 18, 2021, his account statement from Safeguard showed a value of $1,234,274.30. *Id.* ¶ 42. When Weatherford

contacted Safeguard to liquidate his account, a Safeguard representative informed him that his silver coins were worth only $425,000 in value if they were sold now and maintained that Weatherford had committed to holding for three to five years in order to receive the "full value" of his account (*i.e.*, the appreciation necessary to break even). *Id.* ¶ 43.

## ii. Arbitration Proceedings

On July 15, 2022, Weatherford initiated arbitration proceedings with the American Arbitration Association ("AAA"), alleging (1) fraud in violation of the Commodity Exchange Act, 7 U.S.C. § 25, (2) aiding and abetting violations of the Commodity Exchange Act, 7 U.S.C. § 25, (3) fraud, (4) negligent misrepresentation, (5) common law aiding and abetting, and (6) violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, *et seq. Id.* ¶¶ 55–108. On March 24, 2022, AAA appointed an arbitrator in the matter. Letter from Janelle A. Manuel, American Arbitration Association, to Aaron M. Cohn et al., RE: Charles Weatherford vs. Safeguard Metals, LLC and Jeffrey Santulan (Mar. 24, 2022), ECF No. 1-2. The Arbitrator held final hearings from August 23–25, 2022. Pet. ¶ 12. Following post-hearing submissions, the arbitration was closed on September 6, 2022, and an arbitration award was signed and entered in favor of Petitioner on September 30, 2022. *Id.* ¶ 13.

The Arbitrator ultimately found that the Safeguard Respondents were liable for (1) "[u]sing materially false and misleading statements through its website and oral representations by its sales representatives, that Claimant reasonably relied upon, to induce Claimant to invest with Safeguard," (2) "[p]roviding biased and self-interested investment advice," and (3) "[m]isrepresenting and concealing mark-ups and providing materially false and inflated valuations of [Weatherford's] account. Award of Arbitrator, ECF No. 1-4 ("Award"), at 2–3. The Arbitrator further noted that although Weatherford executed two Account Agreements that contained waivers and disclaimers "to the effect that Safeguard does not provide investment advice and that [Weatherford] assumed full responsibility for investment decisions," Weatherford did not read the Account Agreement because he was told by a Safeguard representative that he did not have to read it as it only contained standard language. *Id.* at 3–4. As a result, the Arbitrator concluded that Weatherford

**detrimentally relied on Safeguard's misrepresentations** in entering into the Account agreement. Further, Safeguard's **wrongful conduct** after [Weatherford] executed the Account Agreement **was not remotely foreseeable** by [Weatherford] and therefore, notwithstanding [his] execution of the Account Agreement, **its waivers and disclaimers that purportedly support Safeguard's defense are ineffective**.

*Id.* at 4 (emphasis added).

The Arbitrator denied Weatherford's request for emotional distress damages, punitive damages, and attorneys' fees. *Id.* at 4. The Arbitrator held that the Safeguard Respondents were to pay Weatherford: (1) **damages** in the sum of $745,023.57, plus an amount equivalent to interest at the rate of ten percent (10%) simple interest on the amount of $1,093,071.87 commencing as of January 1, 2020 through to and including the date of the Award; (2) **costs** in the sum of $15,122.23 (calculated to include Weatherford's expert witness fee and legal costs); and (3) **post award interest** equal to 10% simple interest of the sum of damages and costs until paid. *Id.* at 4.

### B. Procedural History

On October 4, 2022, Weatherford filed the instant Petition to confirm the final arbitration award issued in its favor. *See generally* Pet. On October 25, 2022, the Safeguard Respondents filed an Answer asserting as affirmative defenses: (1) failure to state a claim, (2) that the Arbitrator exceeded his authority in issuing the Award, and (3) that the Award contains a material miscalculation. ECF No. 13 ("Answer"). On February 9, 2023, Weatherford filed a Reply Memorandum in support of his Petition. ECF No. 23 ("Reply"). The Court held oral argument on March 16, 2023.

## II. Applicable Law

### A. The Federal Arbitration Act

Under Section 2 of the FAA, arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). As such, "a party cannot be required to submit any dispute which he has not agreed so to submit." *Three Valleys Mun. Water Dist. v. E. F. Hutton & Co.*, 925 F.2d

1136, 1139 (9th Cir. 1991) (internal quotation marks omitted) (quoting *AT&T Mobility*, 563 U.S. at 648).

Section 9 of the FAA provides that "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made in pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9.

The FAA permits a district court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An arbitrator exceeds his powers when the award is "irrational" or "exhibits a manifest disregard of law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (quoting *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1060 (9th Cir. 1991)); *see also Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) ("An award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." (internal quotation marks omitted) (quoting *McGrann v. First Albany Corp.*, 424 F.3d 743, 749 (8th Cir. 2005)). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Super. Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

However, "confirmation is required even in the face of 'erroneous findings of fact or misinterpretations of law.'" *French*, 784 F.2d at 906.

### III. Discussion

The Safeguard Respondents contend that the Award should not be confirmed because (1) the Petition fails to state a claim upon which relief can be granted, (2) the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made, and (3) there was an evident material miscalculation of figures referred to in the award. Answer at 5–6.

### A. The Petition states a claim upon which relief can be granted.

The Safeguard Respondents' Answer contends, without any support, that the Award should not be confirmed because the Petition fails to state a claim upon which relief can be granted. Answer at 5. According to the Account Agreements, "judgment on the Award rendered by the Arbitrator may be entered in any court having *competent* jurisdiction." Account Agreement 1, at 4. Section 9 of the FAA states that "[i]f no court is specified in the agreement of the parties," as is the case here, then the application may be made "to the United States court in and for the district within which such award was made. 9 U.S.C. § 9. The Award was made in Los Angeles, California, meaning that the Central District of California—where this Court sits—is the appropriate court to which the application should be made. Moreover, Section 9 allows for a party to apply to an appropriate court "for an order confirming the award"—the precise relief that Weatherford requests here. *Id.*

The Safeguard Respondents have not furnished any evidence that this Court lacks competent jurisdiction to enter the Award or that the Petition otherwise fails to state a claim upon which relief can be granted. As a result, the Court finds that the Safeguard Respondents have failed to meet their burden of establishing grounds for vacating the Award. *See U.S. Life Ins. Co.*, 591 F.3d at 1173.

### B. The Arbitrator did not exceed his powers or otherwise imperfectly execute them.

The Safeguard Respondents further contend, again without any support, that the Award should not be confirmed because the Arbitrator "exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Answer at 5.

As an initial matter, the Court notes that both parties explicitly agreed to arbitrate "any controversy, claim, or dispute arising out of or relating to" the Account Agreements governing the parties' relationship. Account Agreement 1, at 3. Indeed, the Safeguard Respondents do not appear to contend that the disputed issues fall beyond the scope of arbitrable issues or that the Arbitrator does not have the authority to preside over these arbitration proceedings. Additionally, the Court does not find—nor do the Safeguard Respondents provide—any evidence that the Award was "irrational" or exhibited a "manifest disregard of law." *Kyocera Corp.*, 341 F.3d at 997. As a result,

the Court finds that the Safeguard Respondents have again failed to meet their burden of establishing grounds for vacating the Award. *See U.S. Life Ins. Co.*, 591 F.3d at 1173.

### C. There was no evident material miscalculation of figures referred to in the award.

The Safeguard Respondents last contend that the Award should not be confirmed because "there was an evident material miscalculation of figures referred to in the award." Answer at 6. However, they do not identify the material miscalculation or otherwise propose an alternative calculation. The Court therefore finds that the Safeguard Respondents have again failed to meet their burden of establishing grounds for vacating the Award. *See U.S. Life Ins. Co.*, 591 F.3d at 1173.

/ / /

/ / /

IV. **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Petition to Confirm Arbitration Award is GRANTED and the Award is CONFIRMED;
2. The Court enters FINAL JUDGMENT in favor of Weatherford, totaling $1,045,691.45[3] (principal plus interest), plus costs in the amount of $15,122.23, for a total of $1,060,813.68,[4] jointly and severally, against Safeguard Metals, LLC and Jeffrey Santulan (a/k/a Jeffrey Hill, a/k/a Jeffrey Ikhan);
3. Post-Award interest on the judgment amount shall accrue at the rate of 10% simple interest from the date of the Award entered on September 30, 2022, pursuant to the terms of the Award; and
4. The Court shall retain jurisdiction for purposes of any collection or enforcement proceedings in connection with the judgment.

IT IS SO ORDERED.

Dated: March 21, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[3] The Court's calculation differs from the Petitioner's calculation. The Petitioner has calculated the principal plus interest amount as equally $1,045,618.33. The Court calculated the daily rate of interest at $299.47, consistent with the Arbitrator's number. The relevant period, from January 1, 2020, through and including the date of the Arbitration Award, September 30, 2022, encompasses 1,004 days. The daily rate of interest multiplied by the number of days in the relevant period equals $300,667.88 total interest. $300,667.88 plus the total estimated loss of $745,023.57 equals $1,045,691.45.

[4] The Court's calculation differs from the Petitioner's calculation because of the differing calculation as to principal plus interest. *See supra* note 3. The Petitioner has calculated final judgment as equaling $1,060,740.56.